**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| WILLIAM P. EBLEN, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | No.: 3:26-CV-315-TRM-DCP |
| | ) | |
| KNOX COUNTY SHERIFF'S | ) | Judge Travis R. McDonough |
| DEPARTMENT, TOM SPANGLER, | ) | |
| CORPORAL STEWART, AND OFFICER | ) | Magistrate Judge Debra C. Poplin |
| HURST, | ) | |
| | ) | |
| *Defendants.* | ) | |

**MEMORANDUM AND ORDER**

Plaintiff, a pretrial detainee incarcerated at the Roger D. Wilson Detention Facility ("RDWDF"), filed a civil rights complaint under 42 U.S.C. §1983 (Doc. 2) and motion for leave to proceed *in forma pauperis* (Doc. 1). Having duly considered these filings, the Court **GRANTS** Plaintiff's motion to proceed as a pauper and **PERMITS** Plaintiff's failure-to-protect claims to proceed against Defendants as set forth below.

I.      **MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS***

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee. *See* 28 U.S.C. § 1915(a). A review of the certification of Plaintiff's inmate trust account demonstrates that he lacks sufficient financial resources to pay the filing fee in a lump sum (*See* Doc. 1). Accordingly, pursuant to 28 U.S.C. § 1915, the Court will **GRANT** Plaintiff's motion (*Id.*).

Plaintiff will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, 800 Market Street, Suite 130, Knoxville, Tennessee, 37902 twenty percent (20%) of Plaintiff's preceding monthly income (or

income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) has been paid to the Clerk.  28 U.S.C. §§ 1915(b)(2) and 1914(a).

To ensure compliance with this fee-collection procedure, the Clerk will be **DIRECTED** to mail a copy of this Memorandum and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and to the Court's financial deputy.  This Order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## II.      SCREENING OF COMPLAINT

### A.      Screening Standard

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune.  *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999).  The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure.  *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).  Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than lawyer-drafted pleadings.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, allegations that give rise to a mere possibility that a plaintiff might later

2

establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must establish that a "person" acting "under color of" state law deprived him of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983.

**B.      Plaintiff's Allegations**

On March 16, 2026, Inmate Brian Burkhalter threw two heavy plastic chairs at Plaintiff in Pod 3C at the RDWDF (Doc. 2, at 3). Plaintiff deflected the first chair without injury, but the second chair hit his left hand and broke his thumb (*id*. at 3). The "assault occurred . . . without provocation and [was] unexpected" (*id.*). But Plaintiff and Inmate Burkhalter had previously spoken "to each other on numerous occasions[,]" and Burkhalter had disclosed to Plaintiff "that he has an extensive mental health illness" and admitted that he had been ordered to undergo mental health evaluations and take mental health classes in the past (*id.* at 5). Inmate Burkhalter also told Plaintiff that he had to be placed in an isolation cell upon his arrival at the RDWDF because he had been behaving aggressively at the time of his arrest, and that once he was in the isolation cell, officers "slid prongs under the door and began shocking him" (*id.* at 5–6).

Approximately fifteen minutes before Inmate Burkhalter's assault on Plaintiff, Inmate Burkhalter had assaulted two other inmates in an incident "that went undetected and lasted for approximately thirty (30) to forty-five (45) minutes" (*id.* at 4). All three assaults went undetected despite the length of the assaults and even though Corporal Stewart and Officer Hurst were responsible for watching the security cameras on that date (*id.*). Inmate Burkhalter was

3

removed from the pod only because Officer Hurst observed Burkhalter hitting a table with a "wet floor" sign during Officer Hurst's walk through at approximately 8:30 p.m. on March 16, 2023 (*id.*).

By the early morning hours of March 17, 2026, the pain and swelling to Plaintiff's thumb had increased, and he reported the injury to Officer Ackers (*id.*). Officer Ackers sent Plaintiff to the medical unit, where an x-ray confirmed that Plaintiff's thumb was broken (*id.* at 3, 4–5). On March 26, 2026, Plaintiff was transported to the Knoxville Orthopedic Clinic, where medical personnel secured his thumb with a brace that he wore six to eight weeks (*id.* at 3–4).

On March 18, 2026, Corporal Stewart came to speak to Plaintiff after learning from another inmate that Plaintiff's thumb had been broken (*id.* at 5). During the investigation into the incident involving Plaintiff, Lt. Handley reviewed the camera footage from March 16, 2026, and learned of the other two assaults (*id.*). Inmate Burkhalter was ultimately convicted of all three assaults and was placed in segregation (*id.*).

The RDWDF "has a long and documented history of improperly classifying and housing" aggressive, violent, mentally ill inmates with the general population (*id.* at 6). Physical assaults are a direct result of this practice (*id.*). Before Plaintiff was assaulted by Inmate Burkhalter, Plaintiff was assigned to Pod 4C with an inmate with "a known violent, aggressive, and mental health illness history" who had assaulted other cellmates (*id.* at 6–7). Although this inmate did not assault Plaintiff, Plaintiff witnessed him talking to "voices[,]" and he had to be taken to the medical unit for observation on several occasions (*id.* at 7).

In April 2026, Plaintiff was rehoused to Pod 4A with Inmate Chad Pickard, who "also had a known violent, aggressive, and mental health illness history" (*id.*). Inmate Pickard, who

was being treated for his mental issues while at RDWDF, was placed in the "hole" for ninety (90) days after physically assaulting an officer (*id.*).

On May 4, 2026, Plaintiff was assigned to Pod 6C, cell 211 (*id.* at 8). Inmate Burkhalter was housed only five cells away in cell 216 (*id.*). Plaintiff reported this to an officer, who told Plaintiff, "It's okay[,] you will not come out together" (*id.*). The following evening, Plaintiff was taken to another county for court (*id.*). Upon his return to the RDWDF on May 16, 2026, Plaintiff was assigned to Pod 6C, cell 106 (*id.*). Plaintiff remained there until May 26, 2026, when he was rehoused to the "heart healthy" medical pod (*id.*).

Plaintiff claims that Defendants knew or should have known that Inmate Burkhalter is violent and mentally ill and should have housed Inmate Burkhalter within RDWDF's mental health unit instead of with the general population (*id.* at 6). Plaintiff's assault occurred, he contends, because the Knox County Sheriff's Department failed its duty to protect Plaintiff and provide him with a secure place of confinement (*id.* at 8–9).

Aggrieved, Plaintiff filed the instant action against Defendants Knox County Sheriff's Department, Sheriff Tom Spangler, Corporal Stewart, and Officer Hurst in their individual and official capacities, seeking monetary damages (*id.* at 3, 9).

**C.    Analysis**

In his complaint, Plaintiff identifies himself as a pretrial detainee (*id.* at 9). Therefore, the Court will assume for screening purposes that the greater protections of the Fourteenth Amendment apply to his claims. *See Lawler as next friend of Lawler v. Hardeman Cnty.,* 93 F.4th 919, 926 (6th Cir. 2024) (noting pretrial detainee's constitutional protections originate from the Due Process Clause); *see also Love v. Franklin Cnty.*, 376 F. Supp. 3d 740, 745 (E.D.

5

Ky. 2019) (finding "the Fourteenth Amendment affords pretrial detainees greater protections than those afforded to convicted prisoners by the Eighth Amendment" (citations omitted)).

A correctional official's failure to protect a pretrial detainee rises to the level of a constitutional violation only where the detainee was "incarcerated under conditions posing a substantial risk of serious harm," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), to which the prison official "acted (or failed to act) deliberately and recklessly[,]" *Westmoreland v. Butler Cnty.*, 29 F.4th 721, 728 (6th Cir. 2022) (citing *Brawner v. Scott Cnty., Tenn.*, 14 F.4th 585, 596 (6th Cir. 2021)). A constitutional violation occurs under this standard where the official "[1] act[ed] intentionally in a manner that [2] put[] the plaintiff at a substantial risk of harm, [3] without taking reasonable steps to abate that risk, and [4] by failing to do so actually cause[d] the plaintiff's injuries." *Stein v. Gunkel*, 43 F.4th 633, 639 (6th Cir. 2022) (citing *Westmoreland*, 29 F.4th at 729). Each Defendant's liability must be assessed separately. *Id.* at 640 (citing *Greene v. Crawford Cnty.*, 22 F.4th 593, 607 (6th Cir. 2022)).

### 1. Knox County Sheriff's Department

Plaintiff cannot maintain suit against the Knox County Sheriff's Department, because it is not a "person" within the meaning of § 1983. *See Anciani v. Davidson Cnty. Sheriff Office*, No. 3:19-CV-169, 2019 WL 1002503, at *2 (M.D. Tenn. Feb. 28, 2019) ("It is well established that in Tennessee federal courts, a sheriff's office or police department is not a 'person' subject to suit under 42 U.S.C. §1983." (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994))). Accordingly, this Defendant will be **DISMISSED**.

Instead, the real party in interest is Knox County. And, to the extent Plaintiff has sued each individual Defendant in his or her official capacity, such claims are likewise against the County. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit

6

is, in all respects other than name, to be treated as a suit against the entity"). But to sustain a claim against the County, Plaintiff must allege facts from which the Court could plausibly infer that implementation of an official policy, practice, or custom caused a violation of his constitutional rights. *See Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 691 (1978) (holding that municipalities cannot "be held liable [except for] action pursuant to official municipal policy of some nature"). This requires Plaintiff to "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987)).

Here, Plaintiff alleges that he was physically assaulted because of Knox County's policy of failing to properly classify and house mentally ill and/or violent inmates; namely, Inmate Burkhalter. Accordingly, the Court will **PERMIT** Plaintiff's failure-to-protect claim to proceed against Knox County, and the Clerk will be **DIRECTED** to update the docket to include this Defendant.

### 2. Sheriff Tom Spangler

To state a claim against Sheriff Spangler individually, Plaintiff must adequately plead that Sheriff Spangler's own actions violated the Constitution. *Iqbal*, 556 U.S. at 676; *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted). Plaintiff does not allege any facts suggesting Sheriff Spangler's personal involvement in any of the events giving rise to this suit, and all individual-capacity claims against him will be **DISMISSED**.

7

But because Plaintiff has alleged that Sheriff Spangler bears legal responsibility for the overall operation of the RDWDF, and that he knew or should have known of numerous instances of mentally ill and/or violent prisoners assaulting others in general population but failed to take curative action, thus leading to the assault on Plaintiff, the Court will permit an official-capacity claim to **PROCEED** against this Defendant.  *See, e.g., Leach v. Shelby Cnty.*, 891 F.2d 1241, 1247–48 (6th Cir. 1989).

### 3. Officer Hurt and Corporal Stewart

Plaintiff contends that Inmate Burkhalter was allowed to assault three inmates on March 16, 2026, because Officer Hurt and Corporal Stewart failed to monitor the security cameras.  As Plaintiff maintains he was the third inmate to be assaulted in a set of incidents that lasted approximately thirty (30) to forty-five (45) minutes, the Court finds he has plausibly alleged a failure-to-protect claim against these Defendants, and individual-capacity claims against Defendants Hurt and Stewart will **PROCEED**.  But because Plaintiff does not contend that implementation of a Knox County policy or custom caused this failure to properly monitor the security cameras, any official-capacity claim against these Defendants will be **DENIED**.

## III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* (Doc. 1) is **GRANTED**;

2. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

3. The Clerk is **DIRECTED** to mail a copy of this Memorandum and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy;

4. The Clerk is **DIRECTED** to add Knox County as a Defendant;

5. Plaintiff has set forth a plausible failure-to-protect claims against (1) Knox County and Sheriff Tom Spangler in his official capacity and (2) Officer Hurst and Corporal Stewart in their respective individual capacities, and these claims will **PROCEED**;

6. The Clerk is **DIRECTED** to send Plaintiff service packets (a blank summons and USM 285 form) for Defendants Knox County, Sheriff Spangler, Officer Hurst and Corporal Stewart;

7. Plaintiff is **ORDERED** to complete the service packets and return them to the Clerk's Office within twenty-one (21) days of entry of this Order;

8. At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service, *see* Fed. R. Civ. P. 4;

9. Plaintiff is **NOTIFIED** that if he fails to timely return the completed service packets, this action will be dismissed;

10. Defendants shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If any Defendant fails to timely respond to the complaint, it may result in entry of judgment by default against that Defendant;

11. All other claims and Defendants are hereby **DISMISSED**; and

12. Plaintiff is **ORDERED** to immediately inform the Court and Defendant or her counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**

9