**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| WILLIAM P. EBLEN,<br><br>Plaintiff,<br><br>v.<br><br>KNOX COUNTY, TOM SPANGLER, CORPORAL STEWART, AND OFFICER HURST,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No.: 3:26-CV-315-TRM-DCP |

**MEMORANDUM OPINION**

Plaintiff William P. Eblen is proceeding pro se and *in forma pauperis* on a complaint under 42 U.S.C. § 1983 that alleges Officer Stewart, Officer Hurst, Knox County Sheriff Tom Spangler, and Knox County, Tennessee ("Defendants") failed to protect him while he was a pretrial detainee housed in the Roger D. Wilson Detention Facility ("RDWDF") (*see* Doc. 5). Before the Court is Defendants' Motion to Dismiss and Supporting Memorandum of Law (Doc. 10), to which Plaintiff has responded (Doc. 18), and Defendants have replied (Doc. 22). Having fully considered the parties' pleadings, arguments, and the applicable law, for the reasons stated below, the Court finds that Defendants are entitled to have their motion **GRANTED** (Doc. 10).

## I. BACKGROUND

On March 16, 2026, Inmate Burkhalter threw a chair at Plaintiff in Pod 3C at the RDWDF, breaking Plaintiff's thumb in the process (Doc. 2, at 3). Although the assault was unprovoked and "unexpected[,]" Inmate Burkhalter had previously disclosed to Plaintiff that he had an extensive mental-health history and had previously been placed in isolation for behaving aggressively (*id.* at 5).

Shortly before the incident between Inmate Burkhalter and Plaintiff occurred, Inmate Burkhalter assaulted two other inmates in an incident that lasted "approximately thirty (30) to forty-five (45) minutes" (*id.* at 4). All three assaults went undetected by facility staff, even though Corporal Stewart and Officer Hurst were responsible for monitoring the security cameras on that date (*id.*). Inmate Burkhalter was removed from the pod that morning, but only because Officer Hurst observed Burkhalter hitting a table with a sign during the officer's walk through (*id.*).

Plaintiff subsequently sought and received medical treatment for his thumb (*id.* at 3, 4–5). The incident between Inmate Burkhalter and Plaintiff was investigated, and Inmate Burkhalter was ultimately convicted of all three assaults (*id.* at 5).

Plaintiff maintains that before Inmate Burkhalter assaulted him, Plaintiff was housed with two inmates with violent, aggressive histories (*id.* at 6–7). Plaintiff also alleges that he was later rehoused near Inmate Burkhalter again (*id.* at 7). Plaintiff contends that the RDWDF "has a long and documented history of improperly classifying and housing" aggressive, violent, mentally ill inmates with the general population, and that physical assaults are a direct result of this practice (*id.* at 6).

## II. LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, the court asks whether the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Such a determination requires the plaintiff to present facts that permit the court to infer "more than the mere possibility

of misconduct[.]" *Iqbal*, 556 U.S. at 679. And for purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the truth of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This assumption of truth, however, does not extend to "allegations that are conclusory or require unwarranted inferences based on the alleged facts[,]" *Newberry v. Silverman*, 789 F.3d 636, 640 (6th Cir. 2015), or to a "legal conclusion couched as a factual allegation[,]" *Papasan v. Allain*, 478 U.S. 265, 286 (1986). And "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (citation modified).

Additionally, while Plaintiff's claim survived the Court's initial review under the Prison Litigation Reform Act ("PLRA"), the standard for overcoming a Rule 12(b)(6) motion is a higher bar. *See, e.g., Leach v. Corr. Corp. of Am.*, No. 3:16-CV-2876, 2017 WL 35861, at *3 (M.D. Tenn. Jan. 4, 2017) (stating the required PLRA screening is "a lower burden for the plaintiff to overcome in order for his claims to proceed" than a motion to dismiss under Rule 12(b)(6)).

## III. DISCUSSION

Defendants' motion claims that the complaint fails to overcome the defense of qualified immunity, fails to adequately plead *Monell* liability, and that Plaintiff's allegations against Sheriff Spangler in his official capacity are redundant (Doc. 34). The Court addresses each argument in turn.

### A. Qualified Immunity

Qualified immunity protects governmental employees from individual, civil liability as long as their conduct does not violate clearly established "constitutional rights of which a

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is a defense that protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). To determine whether a defendant is entitled to qualified immunity, courts "inquire (1) whether the facts, when taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right; and (2) whether the right violated was clearly established such that 'a reasonable official would understand that what he is doing violates that right.'" *Woodcock v. City of Bowling Green*, 679 F. App'x 419, 423 (6th Cir. 2017) (quoting *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001), *overruled on other grounds by Pearson v Callahan*, 555 U.S. 223, 229 (2009)). If the answer to either question is "no," then the official is entitled to qualified immunity. *Gordon v. Bierenga*, 20 F.4th 1077, 1082 (6th Cir. 2021).

Once the defense has been raised, a plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity. *Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012). A plaintiff must produce "sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights[,]" *Andrews v. Hickman Cnty.*, 700 F.3d 845, 853 (6th Cir. 2012) (citation modified), and identify a precedent that would put reasonable officials on notice that their actions were unconstitutional "under the specific circumstances they encountered[,]" *Bell v. City of Southfield*, 37 F.4th 362, 367 (6th Cir. 2022). Courts conducting this analysis consider the legal rules that existed at the time of "the challenged conduct[.]" *See Lawler as next friend of Lawler v. Hardeman Cnty.*, 93 F.4th 919, 926 (6th Cir. 2024).

In his complaint, Plaintiff alleges that Defendants Stewart and Hurst failed to protect him from assault by another inmate (Doc. 2 at 4, 5). The Eighth Amendment imposes a duty on

correctional officials to “protect prisoners from violence at the hands of other prisoners.” *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). The same protection applies to pretrial detainees under the Fourteenth Amendment. *Westmoreland v. Butler Cnty.*, 29 F.4th 721, 727 (6th Cir. 2022). At the time of the challenged conduct, the Sixth Circuit held that a pretrial detainee states a failure-to-protect claim by demonstrating that an individual defendant acted (or failed to act) deliberately and recklessly.[1] *Id.* at 728 (citing *Brawner v. Scott*, 14 F.4th 585, 596 (6th Cir. 2021)). Specifically, liability attaches where the official “[1] act[ed] intentionally in a manner that [2] put[] the plaintiff at a substantial risk of harm, [3] without taking reasonable steps to abate that risk, [4] and by failing to do so actually cause[d] the plaintiff’s injuries.” *Stein v. Gunkel*, 43 F.4th 633, 639 (6th Cir. 2022) (citing *Westmoreland*, 29 F.4th at 729). Each Defendant’s liability must be assessed separately. *Id.* at 640 (citing *Greene v. Crawford Cnty.*, 22 F.4th 593, 607 (6th Cir. 2022)).

Plaintiff maintains that Defendants Stewart and Hurst failed to see the alleged assault by Inmate Burkhalter, even though they were “responsible for watching the security cameras” (Doc. 2, at 4). Defendants claim that these facts fail to sufficiently allege any of the elements of a failure-to-protect claim because (1) Plaintiff does not allege either Defendant acted intentionally; (2) Plaintiff fails to allege a substantial risk of harm; (3) Defendants took reasonable steps to abate any risk to Plaintiff once they became aware of the threat Inmate Burkhalter posed; and (4)

---

[1] The Sixth Circuit recently held that *Farmer*’s subjective deliberate-indifference standard applies to failure-to-protect claims by pretrial detainees instead of the standard set in *Brawner v. Scott Cnty., Tenn.*, 14 F.4th 858 (6th Cir. 2021). *Poynter v. Shirley*, 191 F.4th 745, 754 (6th Cir. 2026); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Even if the Court applied the subjective deliberate-indifference standard set in *Brawner* or the one set in *Farmer*’s, Plaintiff’s claims would still fail.

Plaintiff cannot plausibly allege that Defendant Stewart or Hurst caused his injury without sufficient factual allegations to support the first three elements (*see* Doc. 10, at 6–8).

Defendants' position is correct. Plaintiff's theory of liability is that Defendants failed to alleviate a risk that they should have perceived but did not, because they were not paying attention.[2] That is, he argues that they failed to exercise care; a negligence theory of liability. And negligence cannot form the basis for a § 1983 claim. *See, e.g., Daniels v. Williams*, 474 U.S. 327, 331–32 (1986). Further, Plaintiff's complaint contains no factual allegations that Inmate Burkhalter posed a substantial risk of harm to Plaintiff. Plaintiff does not allege any previous aggressive or violent interactions with Burkhalter, and he does not allege that Officers Hurst or Stewart knew of any history between the two. In fact, Plaintiff alleges that the assault occurred "without provocation" and was "unexpected" (Doc. 2, at 3). Therefore, Plaintiff has failed to plausibly allege the remaining elements of a failure-to-protect claim as well. *See Davis v. Chorak*, No. 22-1839, 2023 WL 2487339, at *3 (6th Cir. Mar. 14, 2023) (finding plaintiff failed to allege facts suggesting that "he was personally at substantial risk of assault" because of another inmate's classification or housing "fails to demonstrate a substantial risk" that he would

---

[2] In an attempt to rebut the qualified immunity defense, Plaintiff's response to the motion to dismiss describes the layout of the pod where the assault occurred and explains its operation (*see* Doc. 18, at 7–8). Plaintiff further states that on the night of the assault, another inmate saw Corporal Stewart shopping and Officer Hurst watching a video instead of monitoring the security cameras, which is what allowed Inmate Burkhalter to attack Plaintiff and two others (*id.* at 8–9, 10). But these additional facts were not pled in the complaint and must be disregarded. *See Bates v. Green Farms Condo. Assn*., 958 F.3d 470, 483 (6th Cir. 2020) (noting plaintiff could not supplement complaint with additional facts in a memorandum opposing the motion because memoranda are not "pleadings" under Fed. R. Civ. P. 7(a)); *see also Robbins v. New Cingular Wireless, PCS, LLC*, 854 F.3d 315, 322 (6th Cir. 2017) (finding plaintiffs could not amend their complaint in an opposition brief or ask the court to consider new allegations or evidence not contained in the complaint). But even if these additional facts are considered, they still do not rebut Defendants' arguments that the complaint lacks allegations that Defendants Hurst or Stewart intentionally placed Plaintiff in danger or knew of a substantial risk of danger to him because of Inmate Burkhalter.

be attacked, which "is a prerequisite to showing the deputies failed to take reasonable available measures to abate that risk (the third element), and thereby caused the plaintiff's injuries (the fourth)" (citation modified)). Therefore, Defendants Stewart and Hurst are entitled to qualified immunity.[3]

### B. *Monell* Liability

Plaintiff also seeks to impose liability against Knox County for the constitutional wrongs alleged in his complaint, alleging that Knox County maintains a policy or custom of failing to properly classify and house mentally ill and/or violent inmates (*see* Doc. 2, at 6). That is, he asserts a *Monell* theory of liability against Knox County. Under *Monell*, a plaintiff may sue a governmental entity directly under § 1983 for constitutional violations caused by an official municipal policy or custom. *Monell v. Dep't of Soc. Servs*., 436 U.S. 568, 690 (1978).

To prevail on a *Monell* claim, a plaintiff must (1) identify a policy or custom; (2) connect the policy or custom to the governmental entity; and (3) show that the execution of the policy or custom caused the particular injury. *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993). A municipal policy is an official act representing a deliberate choice by a municipality's "lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694. A "custom" is "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (citation modified). A plaintiff must then "also demonstrate that, through its *deliberate* conduct,

---

[3] Additionally, Plaintiff has not cited any cases on point to establish that under the *Westmoreland* framework, it was clearly established that Defendants Stewart and/or Hurst's failure to perceive the alleged assault was a constitutional violation.

the municipality was the 'moving force' behind the injury alleged." *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).

In his response to Defendants' motion to dismiss, Plaintiff attempts to establish *Monell* liability by arguing inadequate staff training (Doc. 18, at 12–16). But such a claim is not pled in his complaint, and the Court did not permit such a claim to proceed (*see* Doc. 5). And, as previously noted, a plaintiff may not use a response to a motion to dismiss to supplement his complaint. *Bates*, 958 F.3d at 483.

Instead, the complaint pleads what is known as an "inaction" theory of liability. To properly plead *Monell* liability based on a policy of inaction, Plaintiff must plausibly allege that the incident in which he was assaulted is representative of (1) a clear and persistent pattern of illegal activity, (2) which the County knew or should have known about, (3) yet remained deliberately indifferent about, and (4) that the County's custom was the cause of the constitutional violation. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Doe v. Claiborne Cnty.*, *Tenn.*, 103 F.3d 495, 508 (6th Cir. 1996)).

Here, Plaintiff alleges that (1) prior to the incident giving rise to this lawsuit, he was assigned to a cell with an inmate known to have a "violent, aggressive, and mental health illness history" (Doc. 2, at 6), (2) after the incident, Plaintiff was housed for a period of time with another inmate with "a known violent, aggressive, and mental health illness history" (*id.* at 7), and (3) Plaintiff was later assigned to the same pod with Inmate Burkhalter even though he had previously assaulted Plaintiff (*id.* at 8). But the Court agrees with Defendants that such allegations are insufficient to plead the first element of an inaction theory of liability, because Plaintiff offers merely "anecdotal allegations" of wrongdoing that are insufficient to set forth a clear and persistent pattern of unconstitutional violations caused by inadequate inmate classification. *See Abdulsalaam v. Franklin Cnty. Bd. of Comm'rs*, 637 F. Supp. 2d 561, 577

(S.D. Ohio 2009) ("[T]o establish a pattern of illegal activity the plaintiff must go beyond the facts of [his or] her own case and show other instances of the alleged rights violation have occurred in other cases."); *see also Stanfield v. City of Lima*, 727 F. App'x 841, 852 (6th Cir. 2018) ("The mere existence of complaints, without more, is not sufficient evidence to allow a reasonable jury to find the existence of a clear and persistent pattern of illegal activity."); *Dillon v. Hamlin*, 718 F. Supp. 3d 733, 741 (S.D. Ohio 2024) ("First, merely pointing to other cases without discussing the details of each case (including how each case was resolved) is unpersuasive—those details matter.").

Next, Plaintiff has not alleged that any of the incidents in the complaint were known to policymakers who were deliberately indifferent to the risk, nor has he sufficiently alleged causation. Plaintiff claims that because Inmate Burkhalter told Plaintiff he had mental health issues, and because Burkhalter was not housed in the "mental health unit[,]" Knox County "knew or should have known" the risk he posed to Plaintiff (Doc. 2, at 5–6). But Plaintiff does not set forth any factual allegations that policymakers knew of the risk Burkhalter posed to Plaintiff and then deliberately disregarded those known risks. And absent a pattern of prior unconstitutional conduct, there can be no "notice or constructive notice" of unconstitutional conduct attributable to the County. *Thomas*, 398 F.3d at 429. Therefore, Plaintiff has failed to allege a plausible inaction theory of *Monell* liability, and the County is entitled to dismissal.

**C. Sheriff Spangler**

Plaintiff sues Sheriff Spangler "individually and in his official capacity" (Doc. 2, at 3). But as the Court noted in its screening of Plaintiff's complaint, Plaintiff has not alleged any facts suggesting that Sheriff Spangler was personally involved in any of the events giving rise to this

action (Doc. 5, at 7). And in a § 1983 action, each individual is liable only for his own misconduct. *Iqbal*, 556 U.S. at 667.

In response to Defendants' motion to dismiss, Plaintiff argues that Sheriff Spangler bears liability in this action because he is responsible "for the overall operation of the R.D.W.D.F." (Doc. 18, at 17). To the extent Plaintiff intends that allegation to impose liability on Sheriff Spangler individually in his supervisory role, it fails. The Sixth Circuit has held that government officials may be individually liable under § 1983 for a failure to supervise only if they "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir. 1982); *see also Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (explaining that supervisory liability "cannot attach where the allegation of liability is based upon a mere failure to act[,]" . . . but rather, "must be based upon active unconstitutional behavior") (citing *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989)). Therefore, the complaint fails to state a plausible claim against Sheriff Spangler individually.

And, to the extent Sheriff Spangler is sued in his official capacity as Sheriff of Knox County, the claim is redundant to Plaintiff's claim against the County. "[A]n official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents." *Claybrook v. Birchwell*, 199 F.3d 350, 355 n.4 (6th Cir. 2000) (citing *Graham*, 473 U.S. at 165). Accordingly, the Court will dismiss Plaintiff's claims against Sheriff Spangler in his official capacity as redundant. *See, e.g., Foster v. Mich.,* 573 F. App'x 377, 390 (6th Cir. 2014) ("Where the entity is named as a defendant, an official-capacity claim is redundant."); *Schirmer v. Powell Cnty. Det. Ctr.*, 685 F. Supp. 3d 459, 463 (E.D. Ky. 2023)

(dismissing as redundant official-capacity claims against sheriff and jailer where same claims were raised against governmental entities).

## IV. CONCLUSION

For the reasons set forth above, the Court will **GRANT** Defendants' motion (Doc. 10), and this action will be **DISMISSED**.

**SO ORDERED.**

/s/ ***Travis R. McDonough***
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**